THE STATE, EDWARD MARTIN, PROSECUTOR, v. JOB STILLWELL, OVERSEER OF ROAD DISTRICT NO. 9, &c.

The return of surveyors laying out a road was dated September 4th, 1843, but was not delivered to the clerk of the Common Pleas until February 7th, 1846, when it was recorded by him without the order of the court. In the spring of 1844, a road was opened which, in the main, corresponded with that described in the return. *Held*, that the legality of the highway depended upon dedication, not upon the return.

On *certiorari* in matter of road.

In 1843 application was made to the Common Pleas of Monmouth county for the laying out of a public road, two rods wide, in the township of Freehold. Thereupon the court appointed surveyors, who, on September 4th, 1843, dated and signed a return to the effect that they had laid out the road applied for, and had fixed the second Tuesday in December then next as the time when the overseer of highways should open the same for public use. This report was not delivered or transmitted to the clerk until February 7th, 1846, when it was recorded by him without any order from the court.

In the spring of 1844 a road was opened which substantially agrees with that described in the return, except that it begins about thirty feet to one side of that so described, and is not uniformly so wide as the return required. The road remained as opened until August, 1886, when the surveyor of highways applied, according to the statute, to justices and surveyors for the removal of alleged encroachments. These officers, having examined the matter, reported that the road was encroached upon, but that they were unable to determine the true boundaries of the highway according to the return above mentioned, and therefore they defined the centre line of the road as it was used, and ordered that it be opened to the width of one rod on each side of that centre line, so as to secure the width laid down in the return.

Martin v. Stillwell.

The prosecutor, whose hedge stands on the line of the road as originally opened, but will be within the road if widened as directed, seeks to have the proceedings of the justices and surveyors set aside.

Argued at February Term, 1888, before Justices VAN SYCKEL, KNAPP and DIXON.

For the prosecutor, *Geo. C. Beekman.*

For the defendant, *J. Clarence Conover.*

The opinion of the court was delivered by

DIXON, J. The first question for decision is whether the road now in controversy should be legally regarded as that laid out by the surveyors in 1843, having their return for its lawful basis. If it should, then the present action of the justices and surveyors, designed to secure conformity between the existing highway and that set out in the return, may be justified; if it should not, such action is unwarranted.

This question must, I think, be answered in the negative.

When the existing road was opened, the return had not been so dealt with as to constitute authority for the opening of the road described in it. A condition precedent to such authorization was that the return had been recorded in the office of the clerk of the Court of Common Pleas. The language of the Road act is: "Every road so laid out, * * * *and recorded* as aforesaid, shall be a lawful highway * * * from the time appointed for the opening of the same." This road was opened in the spring of 1844; the return was not recorded till February 7th, 1846; so that, when opened, and for nearly two years thereafter, the legality of the road could not depend upon this return. It depended upon the dedication of the land-owners and the public use.

The recording of the return did not change the character of the highway. The Road act declares that in every case of neglect or refusal to deliver or transmit the return to the

clerk, in whose office it is to be recorded, within fifteen days. after its date, the return shall be void. This return bears. date September 4th, 1843 ; it does not appear to have been delivered or transmitted to the clerk until February 7th, 1846. Such delay must be attributed to the neglect or refusal of those whose duty it was to deliver or transmit the return, there being no evidence of any other cause for it, and no other cause being sufficiently probable to warrant a presumption of its existence. Hence, according to the terms of the statute,. the return had become void before it was recorded. Of course, a *void* return could not change the character of the highway.

It is, however, contended that the statute, by its true construction, does not mean that the return should be *void*, but only that it should be *voidable*, and it is insisted that the act of the clerk, in recording this return before proceedings were taken to set it aside, restored and established its validity.

In construing statutes, the primary rule observed by courts is to give the words their ordinary signification, and, as was said by this court in *Proprietors of Morris Aqueduct* v. *Jones*, 7 *Vroom* 206, " every requirement of an act must have the full effect the language imports, unless such interpretation of the words will lead to great inconvenience, injustice, or a subversion of some important object of the act." A slight review of the legislation of the state, on the subject of opening highways, will, I think, indicate that the construction thus contended for would defeat, instead of assisting, the purpose of the legislature, and would, moreover, work substantial injustice.

Prior to 1799 the opening of new public roads was committed to the surveyors of highways solely, and their return laying out such a road was the final act in legalizing the highway. Although the return was to be recorded in the Road Book, that was not a pre-requisite to the opening of the road. *Allinson's Laws, p.* 386, § 3. But in 1799 (*Pat. L., p.* 387), the subject of opening highways was placed under the control of the courts. Then, the recording of the return in the office of the clerk of the court was made necessary before the road

Martin v. Stillwell.

laid out by the surveyors could be lawfully opened, and the clerk was directed not to record the return until ten days after he received it, so that persons aggrieved might, within that time, enter a *caveat*, which should stay all further proceedings until the court had passed upon the grounds of complaint. Thus, substantially, the law stood until 1820, when the particular provision now under consideration was introduced. *Elmer's Dig.*, p. 481. Its manifest object was to render more convenient the exercise of the right of appeal by persons aggrieved. Before this provision, no limit being fixed to the time within which the return should be filed after it was dated and signed, persons desirous of entering a *caveat* were required to watch the files of the court for an indefinite period, and so, unless they used extreme vigilance, might be tricked out of their right of appeal by designing applicants for the road; but with this provision, the necessity for inspection of the files was confined within reasonable bounds.

If, now, we determine that the return may, notwithstanding this enactment, be withheld from the files for an indefinite period, and then, by the mere acts of filing it and recording it, the return will acquire validity, the object of the statute will evidently be thwarted. And so important for the administration of justice do the courts deem reasonable notice to the parties concerned, that they are always inclined to uphold legislative enactments having this end in view. The present case affords a marked instance of the probable injustice of sustaining the position contended for. The owners of land over which this road was opened in 1844 had then had no opportunity of legally objecting to the road laid out by the surveyors, nor did a legal possibility of interposing an objection arise until two years afterwards, and then they had no notice of it; and even yet, forty years after the legal possibility became extinct, no real opportunity has been afforded them; nevertheless they should be told, it is claimed, that such an opportunity, which justice would accord to them, and which the language of the legislature would assure to them, must now be denied, because of the mere ministerial act of a

clerk in transcribing a document.   Such a result could not be the outcome of sound principles.

Of course, if this return had been recorded in pursuance of an order of the Court of Common Pleas, a very different case would be presented.   That court is a judicial tribunal, invested with the power, and therefore charged with the duty, of seeing that parties to be affected by its judgments have proper notice of its proceedings, and the legal presumption in favor of the propriety of its judgments cannot, under ordinary circumstances, be collaterally gainsaid.   The judgment itself precludes examination of the preceding acts upon which it is supposed to rest.   But the acts of ministerial officers constitute no such barrier.   *Tasto* v. *Klopping,* 14 *Vroom* 448. The act of the clerk in recording this return does not prevent the court from looking into the facts, which, according to the statute, rendered the return void.

My conclusion, therefore, is that the highway rests upon dedication, and not upon this return, and that the justices and surveyors had no right to order the removal of the prosecutor's hedge so as to widen the highway beyond the width to which it was opened.   Consequently their proceedings must be set aside.

No costs will be awarded.